## Arthurs *versus* King *et al.*

1. Where one of the parties to a transaction is dead, the survivors cannot be permitted to testify to matters in relation thereto that occurred during the lifetime of the deceased.

2. In ejectment A. claimed the land by virtue of a deed from the executor of Z., whose will empowered his executor to sell his real estate. Defendants claimed under B., who alleged that Z., in his lifetime verbally agreed to sell the land to C., by whom the purchase-money was afterwards paid, and at whose request the deed was executed to B., the deed being delivered to C., to hold for B., until the purchase-money was paid. The deed to B., was endorsed on the deed whereby Z. had acquired title, and was found in the possession of the executor of Z. In the ejectment trial the deposition of C. was offered to prove this parol agreement and the execution and delivery of the deed. *Held,* that he was sufficiently interested in the result of the suit to render him incompetent to testify to matters that occurred during the lifetime of Z., and that his testimony should have been excluded. *Held, further,* that B. was incompetent, for like reasons, to testify to the delivery of the deed, or to facts occurring in the lifetime of Z., from which its delivery might be inferred.

3. In charging the jury as to what would unseat lands, the court in substance instructed them that actual abandonment of the improvement was not enough, unless the land remained deserted and abandoned for such a length of time as to "grow over with brush and trees." *Held,* that this requirement was too stringent, and that if the condition of the premises was such as to afford the most satisfactory evidence to the assessor that the improvements had been actually abandoned and the land permitted to assume its natural state it might properly be considered unseated.

4. It seems also that if the clearing of the land over its line was accidental and without any intention of taking possession of the tract on which the clearing was done it would not have the effect of seating it.

June 8th and 9th 1877. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ.

Error to the Court of Common Pleas of *Clearfield county :* Of January Term 1876, No. 85. Certified from the Eastern District.

Ejectment by Richard Arthurs against Andrew King and Sidney Fuller for ninety acres of land in Brady township, Clearfield county, including the northeast corner of tract No. 110, warranted and surveyed in the name of Christian Lower.

The plaintiff claimed to be the owner of tract No. 110, and gave

[Arthurs *v.* King.]

evidence to show three distinct titles thereto. It was admitted of record that the title to the Christian Lower tract was vested in 1850, in Henry Zimmerman, of Schuylkill county. The will of Zimmerman in evidence empowered his executor to sell his real estate, and Dr. Kitzmiller was therein appointed executor. A deed from Kitzmiller to Arthurs, as executor of Zimmerman, dated June 11th 1860, for said tract, was offered in evidence.

The plaintiff also claimed by virtue of a sale of this tract made by John McPherson, treasurer of Clearfield county, in June 1858, for the taxes of the years 1856 and 1857. This sale was made to Richard Shaw, who in 1860, assigned the treasurer's deed to the plaintiff. He claimed further title by virtue of another sale made of this tract by the treasurer of the county to the plaintiff in June 1862, for the taxes assessed and remaining unpaid for the years 1860 and 1861.

The defendants King and Fuller did not claim to be the owners of this land, but were in possession and claimed the right to remain there under one George Bascom, who denied the validity of the titles set up by the plaintiff. The deed from Dr. Kitzmiller as executor of Henry Zimmerman to Richard Arthurs, Bascom contended conveyed no title for the reason that Henry Zimmerman in his lifetime had sold and conveyed this land to one D. P. Boyer, which title Bascom alleged he had acquired. The evidence upon this point was substantially as follows :—

Dr. Boyer testified that in 1851 or 1852 he purchased the Christian Lower tract of land from Henry Zimmerman by a parol agreement, and that he was to pay about $1600 therefor; that in pursuance of this agreement he entered into possession of this land; that having purchased it for lumbering purposes, and after examining it and finding no good site for a saw-mill, he subsequently purchased an adjoining tract from John Overdorf to be annexed to the Christian Lower tract for a saw-mill site; that he took possession of the Overdorf tract and erected upon it a saw-mill and house, and continued to lumber upon the two tracts until the fall of 1853, when, by an agreement dated September 21st 1853, he sold the two tracts to D. B. Rouse and George Bascom; that subsequently, having paid the entire purchase-money to Zimmerman, he (Zimmerman) and wife executed a deed for the Christian Lower tract; that this deed was executed in February 1854, and by Boyer's direction made directly to George Bascom, in order to save the expense of double conveyance; that this deed was delivered by Zimmerman to him (Boyer) and held by him as security for the balance of purchase-money still due him from Bascom ; that he retained possession of this deed until some time in 1857 or 1858, when he delivered it to his father-in-law, John Bosler, as his agent, to receive the balance of the purchase-money from Bascom; that from this time

[Arthurs v. King.]

this deed was mislaid or lost, and its whereabouts unknown to him. John Bosler's testimony substantially corroborated Boyer.

On the 11th day of June 1860, when Dr. Kitzmiller sold this land to the plaintiff, this deed from Zimmerman to Bascom attached to a deed from John Bosler, administrator *de bonis non* of Christian Ley, to Henry Zimmerman for the same land, was produced by Dr. Kitzmiller, with the statement that the deed had come into his hands as the executor of Henry Zimmerman, but when, where and how he obtained possession of it did not appear. From the deposition of Mr. Boughter, an attorney at Lebanon, Pa., it appeared that the deed from Bosler to Zimmerman (to which the other deed was attached), was brought to his office by John Bosler on the occasion of an attempted settlement between Bosler and Zimmerman. The settlement was never concluded, but the deed was left in Mr. Boughter's office, and was probably taken from there by Mr. Zimmerman in his lifetime, or by Dr. Kitzmiller after Zimmerman's death.

Upon this state of facts it was contended by the defendant that Henry Zimmerman having sold and conveyed this land in his lifetime, no title remained in him at the time of his death, which could be subsequently conveyed by his executor.

At the trial, before Orvis, A. L. J., the deposition of Boyer, taken in the case of Arthurs v. Bascom, 28 Leg. Int. 284, on a former trial, wherein the title to the same land was the subject of controversy between the same parties was offered in evidence. The substance of the deposition is given in the foregoing synopsis of Boyer's evidence.

The plaintiff objected to this deposition, because

1. The parties to this suit are not the same as in the case in which the deposition was taken.

2. Henry Zimmerman, the assignor, is dead, and so far as the testimony relates to the execution or delivery of a deed in his lifetime by Zimmerman to witness for Bascom, it is incompetent under the Act of Assembly. It is to prove the delivery of a deed by Zimmerman through Boyer to Bascom in completion of a contract made by Zimmerman with Boyer; the delivery of the deed by Zimmerman in his lifetime is the question at issue, and is denied by the representatives of, and those claiming under, Zimmerman.

The court overruled the objections and admitted the deposition, which was the seventh assignment of error.

Defendants then offered to prove by George Bascom that he saw the deed from Zimmerman to him on at least two occasions in the hands of Boyer and Bosler, who presented it to him and wished him to lift it and pay the purchase-money in the Rouse & Co. contract.

Objected to, because it appearing that witness is substantially the party under whom the defendant King is on the land as tenant, and Zimmerman being dead and these facts occurring in the lifetime of Zimmerman, the witness is not competent to testify as a

[Arthurs *v.* King.]

witness against the title of Zimmerman, conveyed by Kitzmiller, his executor, to plaintiff, so far as those facts were in the lifetime of Zimmerman.

Objections overruled and evidence admitted, which was the eighth assignment.

It was further contended by the defendants that the two tax titles under which the plaintiff claimed were void, for the reason that at the time the taxes were assessed the land was seated and not unseated.

It was not disputed that the taxes for which the Christian Lower tract was sold in 1858, as well as those for which it was sold in 1862, were actually assessed upon and charged against this land, nor that these taxes had been due and unpaid for one full year prior to the sale.

It was contended, however, by the defendants that this tract was seated by virtue of an improvement or clearing of about two acres, made near the southwest corner of the tract, and known as the "Reisinger improvement." The plaintiff admitted that an improvement was made upon this tract by a man by the name of Reisinger as early as 1846 or 1847, but alleged that this improvement was abandoned and permitted to grow up with bushes and trees; in other words, to have returned to a state of nature, long before the assessment of the taxes for the non-payment of which the land was sold.

It was also claimed by the defendant, that independent of the Reisinger improvement, this tract was seated land; that after D. P. Boyer purchased the Christian Lower tract, he also purchased from John Overdorf another tract cornering with this one, and used the two as one; that the Overdorf tract was purchased for the sole purpose of being annexed to the other as a mill site; that as long as Boyer continued to own the land, he occupied and used the two tracts as one—making timber and cutting logs off of both in the same job; that when he sold to D. B. Rouse & Co., he sold the land as one tract containing five hundred acres, describing it by the exterior boundaries of both tracts together; that they entered into possession of the land, used and occupied it as one tract, disregarding any division between the two tracts, and had the land returned by the assessor as one tract upon the seated list in 1855 and 1856; that as the Overdorf tract was seated, having ten or twelve acres cleared with a house upon it, this seated the whole five hundred acres.

In their general charge, the court, *inter alia,* said:—

"The improving of any portion of a tract of land by residence or cultivation seats the whole tract, if it all remains in the same ownership. But such improvement may be abandoned; and if abandoned so long as to permit the land to return to its natural condition, it will become again unseated, and may be assessed and

[Arthurs *v.* King.]

sold as unseated land. Whether the Reisinger improvement was so abandoned and permitted to grow over with bushes and trees you must determine from the evidence. If it was, the tract as far as this improvement is concerned was an unseated tract, and might be so assessed and sold; but if the improvement was kept up, it would render the tract seated and a sale of it as unseated for taxes assessed against it would convey no title."

And again :—

"Now if you find from the evidence that the Christian Lower and John Overdorf tracts were purchased by D. P. Boyer, for the purpose of being used together as a mill property; that he subsequently did use them; that he sold the two to D. B. Rouse & Co. as one tract; that they took possession of, used and occupied them as one tract; and that they returned, or had them returned for assessment as one tract, containing five hundred acres, then we instruct you that the improvement on the Overdorf survey would render the whole five hundred acres seated, and the subsequent sales of the Lower survey as unseated land would be void and vest no title in the purchaser. But if these two tracts were not so used and occupied, or if at the time of the assessments for which the land was sold there was an actual severance of the two tracts, then the Lower tract might be assessed separately, and if not seated by the Reisinger improvement might be sold as unseated land. The questions of fact involved you must determine from all the evidence."

These two portions of the charge constituted, respectively, the first and second assignments of error.

The verdict was for the defendants, and plaintiff took this writ, his assignments of error, *inter alia*, being those heretofore noted.

*G. R. Barrett* and *J. B. McEnally*, for plaintiffs in error.—The testimony of Boyer and Bascom in regard to matters that occurred in the lifetime of Zimmerman should not have been admitted: Karns *v.* Tanner, 16 P. F. Smith 297; Hanna *v.* Wray, 27 Id. 27.

The "Reisinger improvement" did not render the land seated and the court should have so instructed the jury. The soil had certainly returned to a state of nature. With neither permanent residence, cultivation nor any sign of either existing on the tract for years, the assessor could not have been justified in returning it seated, and the instruction of the court was too broad and was calculated to mislead the jury.

*Wallace & Krebs* and *G. A. Jenks*, for defendants in error.— Neither Boyer nor Bascom had sufficient interest in the result of the action to exclude their testimony under the Act of 1869.

The charge of the court properly submitted to the jury to deter-

3 NORRIS—34

mine whether the "Reisinger improvement" was so abandoned as to unseat the land.

Mr. Justice STERRETT delivered the opinion of the court, October 1st 1877.

The land in controversy was claimed by the plaintiff under three separate titles, one of which was based on the deed of Henry Zimmerman's executor. This deed was regularly executed in pursuance of the authority contained in the last will and testament of Zimmerman, in whom it is admitted the title was vested in 1850. If he continued to own and died seised of the land, the executor's deed was sufficient to vest title in Arthurs, the plaintiff. To meet the title thus exhibited, the defendant undertook to prove that Zimmerman sold and conveyed the land in his lifetime; that in 1852, he verbally agreed to sell to David P. Boyer, by whom the purchase-money was afterwards paid, and at whose request a deed was executed to George Bascom, under whom the defendant has been in possession. The deposition of Boyer was admitted for the purpose of proving his parol agreement with Zimmerman; the payment of the purchase-money and subsequent execution of the deed and delivery of the same to Boyer, to be held for Bascom, until the purchase-money due from him to Boyer was paid. There was also evidence tending to show that the plaintiff purchased with notice of the sale to Bascom. The deed to him was endorsed on the deed by which Zimmerman acquired his title and was seen by the plaintiff in the possession of the executor at the time he purchased. It was held by this court, on a former writ of error, that if the deed to Bascom was shown to the plaintiff before he completed his purchase from the executor, it was sufficient to put him upon inquiry as to Bascom's title, and if he neglected to make such inquiry he cannot claim to be an innocent purchaser without notice. In view of the fact that the deed to Bascom was found in the possession of Zimmerman's executor, it was all important for the defendant to prove that it had been delivered, in Zimmerman's lifetime, to Bascom or to some one for him. For this purpose the testimony of Boyer was mainly relied on, and the admission of his deposition forms the subject of the seventh assignment.

While Boyer was not a party to the suit he appears to have been interested in the result. By the terms of his agreement he was bound to make title to Bascom, but instead of procuring a deed from Zimmerman to himself and then conveying to Bascom, he alleges that for the purpose of saving expense he obtained the deed directly from Zimmerman to Bascom and retained it in his own possession as security for the residue of purchase-money. His right to the purchase-money due him depended on sustaining the title which he had thus procured for Bascom. If that failed on the ground that the deed was not delivered, to that extent would Boyer be the loser. Before

the passage of the Act of April 15th 1869, he would have been incompetent on the ground of interest, and we cannot see that he is in any better position since. The subject-matter of the controversy or thing in action was the title to the land which Boyer claims to have purchased by parol from Zimmerman and for which he afterwards procured the conveyance in favor of Bascom. Boyer is one of the parties to the transaction. Zimmerman, the other party, is dead, and whatever rights he may have had passed by the executor's deed to the plaintiff, who now represents the deceased in the title. In construing the act, it has been held that where one of two parties to a transaction is dead, the survivor and the party representing the deceased, stand on an unequal footing as to knowledge of the transaction occurring in the lifetime of the deceased : Karns v. Tanner, 16 P. F. Smith 297. The proviso was intended to exclude parties to the transaction from being witnesses in regard to it, when the opposite party is dead and his rights have become vested in others by his own act or by operation of law. The witness was incompetent and his testimony should have been excluded.

The eighth assignment relates to the admission of Bascom's testimony to prove that he saw the deed from Zimmerman to himself, on at least two occasions, in the hands of Boyer and Bosler, who presented it to him and requested him to lift it and pay the balance of purchase-money. It was objected to on the ground that Bascom was substantially the party in interest under whom the defendants held. The learned judge in his charge says, the defendants " do not claim to be the owners of the land ; they are in possession and claim the right to remain there under Bascom, who is the real defendant in the case." If this be so, he was clearly interested in sustaining his own title ; and while he did not see the deed delivered by Zimmerman to Boyer, he was called to prove facts from which its actual delivery was sought to be inferred. It cannot be said that Bascom was a stranger to the transaction. He was the vendee in the deed which Boyer procured for the benefit of both. They were both parties to the transaction with Zimmerman, whose rights, if any he had at the time of his decease, have since become vested in the plaintiff. It appears to us that the spirit if not the letter of the Act of 1869 excludes him from testifying to the delivery of the deed, or to facts occurring in the lifetime of Zimmerman, from which its delivery may be inferred.

The plaintiff also claimed under two tax sales : one made in June 1858, for taxes of the two preceding years, and the other in June 1862, for taxes assessed in 1860 and 1861. Each of these sales respectively was sufficient to vest a good title in the plaintiff, if the land was unseated when the taxes were assessed and they remained due and unpaid for at least a year prior to the sale. The only defence taken to the tax titles was that the land was seated at the time the taxes were assessed. It was contended that the

[Arthurs *v.* King.]

Christian Lower tract, which embraces the land in controversy, was seated by reason of its having been united with the adjoining Overdorf tract, which at the time was improved and occupied. Under the evidence this was a question for the jury, and we have no means of knowing how it was determined. It was also claimed that it was seated by virtue of what is called the "Reisinger improvement." In relation to this, the evidence tended to show that in 1846 or 1847 Peter Reisinger, who owned an adjoining farm on the south, extended a clearing over the line, so as to embrace about two acres which he had under cultivation for a year or two; that in March. 1849 he died, and the improvement was never cultivated or used thereafter; in 1851 and the two years following all the rails that had enclosed the clearing were removed, and it was thrown entirely open and permitted to grow up. In view of the testimony bearing on this subject, the jury were instructed that "the improving of any portion of a tract of land by residence or cultivation seats the whole tract, if it all remains in the same ownership. But such improvement may be abandoned, and if abandoned so long as to permit the land to return to its natural condition, it will become again unseated, and may be assessed and sold as unseated land. Whether the Reisinger improvement was so abandoned and permitted to grow over with bushes and trees you must determine from the evidence. If it was, the tract, so far as this improvement is concerned, was an unseated tract and might be so assessed and sold; but if the improvement was kept up, it would render the tract seated and a sale of it as unseated for taxes assessed against it would convey no title." This instruction is the subject of complaint in the first assignment. Substantially the same question is presented in the third assignment, and they may be considered together.

While the charge on this branch of the case was in the main correct, it was calculated to make an erroneous impression on the minds of the jury. They would naturally infer from what was said that actual abandonment of the improvement was not enough, unless it remained deserted and abandoned for such a length of time as to "grow over with bushes and trees." This was requiring too much. If the clearing was never used or cultivated after the death of Reisinger, and within a short time thereafter all the rails were removed, and it continued to remain for several years as an open common, the improvement might properly be considered abandoned, without waiting until it grew over with bushes and trees. If, as some of the witnesses testified, the fencing was all taken away in 1852 and 1853, and no use whatever was made of the clearing for many years thereafter, it is altogether probable that in 1860 or 1861, if not before, the condition of the premises was such as to afford the most satisfactory evidence to the assessor that the improvement had been actually abandoned and the land permitted to assume

[Arthurs v. King.]

its natural state.   If such was the fact, the tract was properly considered unseated and assessed accordingly.

Again, if the clearing over the line by Reisinger was accidental and without any intention on his part of taking possession of the tract on which the clearing was done, it would not have the effect of seating it.   In view of the fact that Reisinger owned and lived on the adjoining farm, it is by no means clear, under the testimony in the case, that the clearing over was not of this character; and if the jury had felt at liberty to consider this aspect of the case they might have so found.

The tenth and eleventh assignments present substantially the same questions that were considered and decided when the same title was before this court on a former writ of error.   The remaining assignments of error are not sustained, and there is nothing in either of them that calls for special notice.

Judgment reversed and a *venire facias de novo* awarded.